Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                              1:20-cv-05520

| | |
|---|---|
| Barbara Seaman, Kyle Corbin, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>    - against -<br><br>Kellogg Company,<br><br>       Defendant | Complaint |

    Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

    1.  Kellogg's Company ("defendant") runs annual or semi-annual promotions through on-pack promotions offering free merchandise or services to shoppers who purchase their products, including Eggo Waffles, Pop Tarts and iconic cereal brands.

    2.  These on-pack promotions are significant to shoppers who previously relied on Sunday circulars and in-aisle coupons to influence their decisions on which products to buy.

    3.  A survey of 1,600+ U.S. residents between 18-65 found 60% of respondents prefer on-pack promotions to other methods of learning of promotions or offers.

    4.  In fact, according to HelloWorld's Digital and In-Store Engagement Report, shoppers will choose a product three times more often when offered an extra incentive

    5.  Sixty-seven (67) percent of shoppers said they would take advantage of a guaranteed reward or gift with purchase while in a store.

6. Thirty-seven (37) percent say that a guaranteed reward or gift would most affect their decision when choosing between products.

7. The use of promotions is a key factor in the several seconds it takes for shoppers to choose which of the many products to buy.

8. Unfortunately for consumers, most of them who buy the products will be unable to receive the free offers made by Defendant.

9. Defendant's practice of offering promotions to shoppers is misleading because the promotions expire long before the shelf-life of the Products.

10. Where a shopper views a promotion such as described here, they will have no reason to scrutinize the fine print telling them when the promotion expires.

11. Reasonable consumers are not so innately distrustful of companies and expect that all aspect of consumable items, including promotions, are functional throughout their shelf-life.

12. Defendant can easily cease these practices by printing fewer boxes which contain its promotions, based on the number of products it expects to sell within the time period of the offer.

13. However, defendant is incentivized to print more boxes with promotions than it will sell during the offer period because these offers increase sales of their products.

14. A 2017 promotion offered "$5 Off Crayola" when buying three packs of Eggo Waffles or Pancakes.



15. The Crayola Promotion prominently tells shoppers they will get five dollars off Crayola crayons when they buy 3 packs of Eggos (at once).

16. However, the fine print only visible at the bottom of the box states "Offer Valid 6/1/17 to 9/30/17. See Details On Back."



17. The side flaps of this item reveal an expiration date of October 11, 2018, over a year after expiration of the offer.



18. Another on-pack promotion valid between October 16, 2017 and December 31, 2017 for a $6 movie ticket credit was still available a year later, and the Eggo Waffles upon which it was displayed did not expire until January 2, 2019.



19. A promotion valid between October 2019 and January 2020 offered money towards movie theater concession purchases, "$6 Movie Snack Cash."



20. However, boxes bearing this promotion were still available on store shelves in September 2020, nine months after the promotion expired.

21. This is despite the boxes being within their expiration date and still suitable for purchase and consumption.

22. A promotion valid between March and July 2020 promised shoppers they would "Get a $13 [towards a] Movie Ticket" upon buying any five participating Kellogg's products.



23. Products bearing the $13 Movie Ticket promotion are still for sale on store shelves, even though their expiration dates are far in the future.

24. The offers for money off the products and services are equivalent to Defendant making "free" offers to shoppers.

25. These types of offers have been subject to regulations by the Federal Trade Commission ("FTC"), which recognized "such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." 16 C.F.R. § 251.1(a)(2).

26. The FTC's rules require that "Free" offers disclose all terms and conditions required to obtain the good or service offered "should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood." 16 C.F.R. § 251.1(c).

27. This means that all the relevant terms "should appear in close conjunction with the offer of 'Free' merchandise or service."

28. Though the front of the Products bearing the "free" offers contains small text stating the dates between which the promotions are valid, the font size is miniscule and it is set apart from the more prominent and conspicuous "free" offer.

29. Even though the promotions direct consumers to other parts of the packaging, shoppers are still deceived because the "free" offer specifies what they will receive – money towards Crayola products, concession purchases and movie tickets. 16 C.F.R. § 251.1(c).

30. Further, that the Products are offered for sale long after the promotion is no longer valid causes shoppers to instinctively believe the conspicuous "Free" offers are still valid.

31. If anything, shoppers will expect that large companies like Defendant are capable of adequately estimating the number of Products sold during the period of time the offer is valid, and will not overproduce products with packaging that will remain on store shelves far beyond the dates of the offers.

32. Most shoppers who bought the items in part based on the promotions are not able to take advantage of the free offers.

33. Defendant should offer promotions that expire consistent with the shelf-life of the Products, because not doing so is unfair and misleading to shoppers.

34. Defendant sold more of the Products and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

35. The value of the Products that plaintiffs purchased was materially less than its value as represented by defendant.

36. Had plaintiffs and class members known the truth, they would not have bought the

Products or would have paid less for them.

37. As a result of the false and misleading labeling, the Products are sold at a premium price, approximately no less than $ 2.99 per Eggo Waffles and Pop Tarts and $ 4.99 for cereals, excluding tax, compared to other similar Products represented in a non-misleading way, and higher than the price of the Products if represented in a non-misleading way.

## Jurisdiction and Venue

38. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

39. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

40. Plaintiff Barabara Seaman is a citizen of New York.

41. Defendant Kellogg Company is a Delaware corporation with a principal place of business in Battle Creek, Calhoun County, Michigan and is a citizen of Michigan.

42. "Minimal diversity" exists because plaintiff Barabara Seaman and defendant are citizens of different states.

43. Upon information and belief, sales of the Products in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

44. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Products and the misleading representations about the promotions and/or their recognition as such.

45. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

46. Plaintiff Barabara Seaman is a citizen of New York, Brooklyn, Kings County.

47. Plaintiff Kyle Corbin is a citizen of North Carolina, Raleigh, Wake County.

48. Defendant Kellogg Company is a Delaware corporation with a principal place of business in Battle Creek, Michigan, Calhoun County and is a citizen of Michigan.

49. Defendant sells packaged food products under many of the nation's most well-known and respected brands, like Eggo Waffles, Pop Tarts and cereals like Apple Jacks and Corn Pops.

50. During the relevant statutes of limitations for each cause of action alleged, plaintiffs purchased Products bearing on-pack promotions, within their district and/or State for personal and household consumption and/or use in reliance on the representations.

51. Plaintiff Barabara Seaman purchased one of Defendant's cereals between August and October 2020, with a movie ticket promotion that had expired by the time she purchased it.

52. Plaintiff Seaman purchased the item at Target, 1598 Flatbush Ave, Brooklyn, NY 11210.

53. After she purchased the Product and brought it home, she realized the promotion was no longer valid upon reading the fine print.

54. Plaintiff Kyle Corbin purchased the Eggo Waffles offering five dollars off Crayola crayons in December 2017.

55. Plaintiff Corbin also purchased Pop Tarts and cereals with "free" on-pack promotions offering money towards movie theater concessions and movie tickets in 2019 and 2020.

56. Plaintiff Corbin was unable to receive the "free" promotions because he purchased

these items after the offers were no longer valid, even though the items were still fit for consumption as indicated by their expiration dates.

57. Plaintiff Corbin later would have to squint to see the small print on the front of the label saying when the offer was valid until, after he already purchased the item and brought it home.

58. Plaintiff Corbin notified Defendant's agents through online correspondence that their actions were unfair, deceptive and misleading to hardworking consumers who have trusted Defendant to be forthright and fully honest with them.

59. Plaintiffs bought the Products at or exceeding the above-referenced price because they wanted to receive the free offers.

60. Plaintiffs were deceived by and relied upon the Products' deceptive labeling.

61. Plaintiffs would not have purchased the Products in the absence of Defendant's misrepresentations and omissions.

62. The Products were worth less than what Plaintiffs paid for it and they would not have paid as much absent Defendant's false and misleading statements and omissions.

63. Plaintiffs intends to, seeks to, and will purchase the Products again when they can do so with the assurance that Products' labels are consistent with the Program's components.

## Class Allegations

64. The class will consist of all purchasers of the Products who reside in New York and North Carolina during the applicable statutes of limitations.

65. Plaintiffs seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

66. Common questions of law or fact predominate and include whether defendant's

representations were and are misleading and if plaintiffs and class members are entitled to damages.

67. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

68. Plaintiffs are adequate representatives because their interests do not conflict with other members.

69. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

70. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

71. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

72. Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350 and North Carolina General Statute, Monopolies, Trusts and Consumer Protection, § 75-1.1 *et seq.*
(Consumer Protection Statutes)</u>

73. Plaintiffs incorporate by reference all preceding paragraphs.

74. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

75. Defendant knew or should have known roughly how many items it would sell in the time period during which the offers were valid.

76. Defendant has a highly sophisticated ability to estimate product movement through its life cycle and produce packaging that would be sold during the relevant valid offer periods.

77. Defendant chose to overproduce such packaging because it knew consumers would be at a big disadvantage to try and get it to cease such practices.

78. Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

79. Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

80. Plaintiffs incorporate by reference all preceding paragraphs.

81. Defendant knew or should have known roughly how many items it would sell in the time period during which the offers were valid.

82. Defendant has a highly sophisticated ability to estimate product movement through its life cycle and produce packaging that would be sold during the relevant valid offer periods.

83. Defendant chose to overproduce such packaging because it knew consumers would be at a big disadvantage to try and get it to cease such practices.

84. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

85. Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

86. Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

87. Plaintiffs incorporate by reference all preceding paragraphs.

88. Defendant knew or should have known roughly how many items it would sell in the time period during which the offers were valid.

89. Defendant has a highly sophisticated ability to estimate product movement through its life cycle and produce packaging that would be sold during the relevant valid offer periods.

90. Defendant chose to overproduce such packaging because it knew consumers would be at a big disadvantage to try and get it to cease such practices.

91. Defendant had a duty to not overproduce packaging so that most shoppers who bought the items in part based on the promotions would not be able to take advantage of the free offers.

92. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

93. Plaintiff Corbin provided written notice to defendant, its agents, representatives, retailers and/or their employees, through Defendant's online messaging function.

94. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the on-pack promotions, of the type described here.

95. The Products did not conform to their affirmations of fact and promises due to defendant's unfair actions with respect to the promotions and were not merchantable.

96. Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Fraud

97. Plaintiffs incorporate by reference all preceding paragraphs.

98. Defendant knew or should have known roughly how many items it would sell in the time period during which the offers were valid.

99. Defendant has a highly sophisticated ability to estimate product movement through

its life cycle and produce packaging that would be sold during the relevant valid offer periods.

100. Defendant chose to overproduce such packaging because it knew consumers would be at a big disadvantage to try and get it to cease such practices.

101. Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

102. Plaintiffs incorporate by reference all preceding paragraphs.

103. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: November 13, 2020

                        Respectfully submitted,

                        Sheehan & Associates, P.C.
                        /s/Spencer Sheehan
                        Spencer Sheehan
                        60 Cuttermill Rd Ste 409
                        Great Neck NY 11021-3104
                        Tel: (516) 268-7080
                        Fax: (516) 234-7800
                        *spencer@spencersheehan.com*
                        E.D.N.Y. # SS-8533
                        S.D.N.Y. # SS-2056

1:20-cv-05520
United States District Court
Eastern District of New York

Barbara Seaman, Kyle Corbin, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

Kellogg Company,

Defendant

Complaint

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: November 13, 2020

/s/ Spencer Sheehan
Spencer Sheehan